IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NARASE K. RAMKAHALAWAN, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. WGC-11-3001 |
| ) | |
| SUPERVALU, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiffs Narase K. Ramkahalawan ("Mr. Ramkahalawan") and his wife Falesha Ramkahalawan brought this action against Defendant Supervalu, Inc. ("Supervalu") — a parent corporation with many subsidiaries including Shoppers Food Warehouse and doing business as Shoppers Food Warehouse — alleging negligence and loss of consortium, and seeking a total of $500,000 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 15. The case thereafter was referred to the undersigned. *See* ECF No. 16. Pending before the Court and ready for resolution is Supervalu's Motion for Summary Judgment (ECF No. 22). Mr. Ramkahalawan filed a Response in Opposition (ECF No. 23) and Supervalu filed a Reply (ECF No. 24).

Both parties request an oral hearing. *See* ECF Nos. 22, 23. No hearing is deemed necessary and therefore both requests for oral hearing are **DENIED**. The Court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

# BACKGROUND[1]

On March 17, 2010 Mr. Ramkahalawan and one of his sons were customers at the Shoppers Food Warehouse located at 2801 Smith Avenue in Baltimore, Maryland. While in the produce department Mr. Ramkahalawan saw cucumbers he wished to purchase. He described the sequence of events.

> A: And then I saw these nice big large cucumbers, and I just moved the cart forward, and I tried to reach some. And I felt like in my attempt to reach it, as I reached it, as I stepped -- I made a step, a footstep, that's when I lost balance -- everything.
>
> The hand that was on the cart also let go, and I tried to grab -- something I did with the freezer, I think, I tried to grab. And my hand just went like that (indicating), and it made the contact, and my knee went the other way like that (indicating), and I hit the floor.
>
> \* \* \*
>
> Q: [D]id you have to stretch because you wanted some particular cucumber that was in the back of the display, or what?
>
> A: No. There was a -- well, I couldn't go any further. There were other people shopping also. You know, you just can't push people away. So I made my room that I had there, I made that room. Moved the -- when I pushed the cart a little further, there was [sic] other people in front of me, and then as I see right what I wanted, I tried to grab it, but I had to step to get it. I had to make another step.
>
> And as I made the step to get it, that's when I stepped on the okra. And rather than reaching the cucumber, I hit the floor first.
>
> \* \* \*
>
> Q: So you reached out with your left hand?
>
> \* \* \*

---

[1] In determining whether the moving party has shown there are no genuine issues of any material fact, this Court must assess the factual evidence and all inferences to be drawn therefore in the light most favorable to the nonmoving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).

> A: Yes. And left -- I made a left footstep also, and before I can -- my hand can reach the cucumber, my foot stepped on the okra, and I lost control and slipped and fell there.
>
> Q: Were there mats there?
>
> A: Yes. There were mats. But where I fell, it was a space between the mat. And the reason I knew that, when my head hit, it was not there to cushion it. It was my head that hit solid.
>
> \*       \*       \*
>
> Q: You say that you slipped on okra?
>
> A: Yes. Yes. A hundred percent.
>
> Q: And where your foot slipped on the floor --
>
> A: There was no mat.

ECF No. 22-2 (N. Ramkahalawan Dep. 32:17 – 33:7, 39:10 – 40:2, 12, 15 - 41:2, 14 – 17); ECF No. 23-3 (N. Ramkahalawan Dep. 32:17 – 33:7, 39:10 – 40:2, 12, 15 - 41:2, 14 – 17).

Glenn Miller, the assistant manager, was notified and reported to the scene of the incident. He found Mr. Ramkahalawan on the floor. Mr. Ramkahalawan explained that he slipped on a piece of okra on the floor. ECF No. 23-5; ECF No. 24-1.

Glenn Miller had been in the produce department at approximately 7:30 p.m. with the produce clerk to inspect the produce department floor to "make sure the department's set for business and that there is no trash or spills on the floor. . . ." ECF No. 23-4 (Miller Dep. 10:24 – 11:2). Mr. Ramkahalawan fell approximately 30 minutes later. There was no inspection of the produce department floor between 7:30 p.m. and 8:00 p.m. *See id.* (Miller Dep. 7:20-23). When Mr. Miller inspected the produce department floor at 7:30 p.m., the floor was clean. ECF No. 23-5; ECF No. 24-1.

**JURISDICTION AND VENUE**

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Mr. and Mrs. Ramkahalawan reside in Baltimore, Maryland. *See* Compl. Supervalu is incorporated in the State of Delaware and its principal place of business is in the State of Minnesota. ECF No. 1 ¶ 6. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Id.* ¶ 7; Compl.

Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district. The Court notes Supervalu removed this case from state court to federal court. *See* ECF No. 1.

**STANDARD OF REVIEW**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.  However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

*A.   Overview – Premises Liability*

Before addressing the parties' positions regarding genuine issues as to any material fact, the Court must address some preliminary matters.  Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to substantive law questions.  Under Maryland law a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998).  Maryland law recognizes four categories of individuals:   (1) an invitee, (2) a licensee by

5

invitation, (3) a bare licensee and (4) a trespasser. An invitee is an individual who is on the property for a purpose related to the landowner's business. "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).

A licensee by invitation is a social guest and the landowner "owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the [landowner] but not easily discoverable." *Flippo*, 348 Md. at 689, 705 A.2d at 1148 (citation omitted). For a bare licensee, a person on the property with permission but for his/her own purposes, a landowner only owes a duty to refrain from willfully or wantonly injuring the bare licensee and to refrain from creating "'new and undisclosed sources of danger without warning the [bare] licensee.'" *Id.* (citation omitted). For a trespasser, someone who intentionally and without permission enters another's property, a landowner owes no duty except refraining from willfully or wantonly injuring or entrapping the trespasser.

On March 17, 2010 Mr. Ramkahalawan was a customer at the Shoppers Food Warehouse in Baltimore, Maryland. He was in the store to purchase groceries. Mr. Ramkahalawan was in the store for a purpose related to Shoppers Food Warehouse's business. Mr. Ramkahalawan was thus an invitee.

B.   *Negligence*

Under Maryland law, to establish a *prima facie* case of negligence, Mr. Ramkahalawan must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that

the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (quoting *BG & E v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995), citing *Rosenblatt v. Exxon*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994)). Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do. *Maryland Civil Pattern Jury Instruction* 19:1. Ordinary or reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances." *Id.*

Shoppers Food Warehouse owes a duty of ordinary care to keep its premises safe for an invitee such as Mr. Ramkahalawan. That duty is defined as follows:

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

Shoppers Food Warehouse is not an insurer of Mr. Ramkahalawan's safety while Mr. Ramkahalawan is on its premises. "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965). Therefore, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper

created the dangerous condition or had actual or constructive knowledge of its existence." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

C.     *Actual Knowledge*

The parties do not dispute that Shoppers Food Warehouse owed a duty of ordinary care to keep its store in a reasonably safe condition for Mr. Ramkahalawan, an invitee.  Mr. Ramkahalawan contends Shoppers Food Warehouse breached that duty because Shoppers Food Warehouse had *actual knowledge* of produce on the floor.  Mr. Ramkahalawan asserts Mr. Miller conceded his knowledge of the dangerous condition when Mr. Miller arrived at the produce department.

> A:     And as I went down, and as I hit my head like that and I hit the floor (indicating), as I looked down, I saw a lot of different kind of vegetables on the ground.  And that's when the manager came up and said, "They really over packed these things." He said it with his own mouth.  "They over packed these things."  It was overstocked.

ECF No. 22-2 (N. Ramkahalawan Dep. 42:3 – 9); ECF No. 23-3 (N. Ramkahalawan Dep. 42:3 – 9).

Based on his personal experience previously working as a produce clerk at another retail establishment, Mr. Ramkahalawan opined an employee at Shoppers Food Warehouse had over stacked the produce.

> A:     I worked at Seven Mile Produce for a while, and I can tell you from my experience, if you over stack certain items, they will roll from the shelf.
>
> Somebody, you know, is going to pass by and take one or two, and then they leave it kind of thing.  And then all of a sudden, they can start rolling down if they are over -- if they are over piled up -- if they put too much at the same time.
>
> Q:     And how do you know that that happened with this okra?

> A: Because of my experience by working I knew it was over stacked. And that's what happened.
>
> Q: So --
>
> A: I mean, nobody would go in the market and take things and throw it on the floor.
>
> Q: Does anybody go to the market and drop things on the floor?
>
> A: Nobody would do that.
>
> Q: Nobody would drop anything on the floor?
>
> A: They wouldn't willfully do that. From my experience, working at Seven Mile Market, and I worked in the produce department, I'm telling you, even the manager who had came [sic] out there, he said, "These things are overstocked. They're over piled up." Do you understand? That's why the green beans were on the floor and the okra was on the floor.

ECF No. 22-2 (N. Ramkahalawan Dep. 42:17 – 44:1); ECF No. 23-3 (N. Ramkahalawan Dep. 42:17 – 44:1).

Further, Mr. Ramkahalawan suggests Shoppers Food Warehouse's actual knowledge is reflected in the *Customer/Vendor Incident Worksheet* completed by Mr. Miller. In response to the question, "How did [the substance/debris] get on the floor/area", Mr. Miller answered "fell off counter." ECF No. 23-6; ECF No. 24-2. On this form Mr. Miller did not indicate the last time the area was inspected before Mr. Ramkahalawan fell. Mr. Ramkahalawan questions whether an inspection even occurred at 7:30 p.m. and thus argues Shoppers Food Warehouse failed in its duty to properly inspect the produce department both before and after 7:30 p.m.

Mr. Ramkahalawan fails to demonstrate actual knowledge by Shoppers Food Warehouse. Mr. Miller recorded in a memorandum, on the same night of the incident, that he inspected the produce department floor approximately 30 minutes before Mr. Ramkahalawan fell. Although Mr. Ramkahalawan attempts to undercut this evidence by characterizing it as a "self-serving

addendum," no evidence has been introduced by Mr. Ramkahalawan challenging Mr. Miller's contemporaneous memorandum. Additionally, although a storekeeper has a duty to inspect, "it would be unreasonable to hold that it is [the storekeeper's] duty to conduct a continuous inspection tour of the store." *Moulden,* 239 Md. at 233, 210 A.2d at 726.

Mr. Ramkahalawan also contends the space between mats on the floor was a contributing factor causing him to fall.

> Q: Did the mats on the floor have anything to do with your fall?
>
> A: I believe if there were mats all the way, rather than separated, I would not have fallen, because the mat would have helped do some traction, you know.
>
> I wear boots all the time -- boots all the time. And I was wearing good boots at the time -- Timberland. If those mats were in their joined, I don't think I would fall.
>
> Q: But the mats didn't cause you to fall? I mean, you didn't trip on the mat or anything like that?
>
> A: No.

ECF No. 22-2 (N. Ramkahalawan Dep. 47:3 – 16); ECF No. 23-3 (N. Ramkahalawan Dep. 47:3 – 16).

At the time of the incident Mr. Ramkahalawan did not tell Mr. Miller that a mat was a factor in his fall. Mr. Ramkahalawan mentioned the okra causing him to fall. *See* ECF No. 23-5; ECF No. 24-1. On the *Customer/Vendor Incident Worksheet*, in response to the question, "Describe [h]ow it happened", Mr. Miller wrote, "customer slipped on piece of okra on floor." ECF No. 23-6; ECF No. 24-2. This worksheet makes no reference to a mat and there is no indication that Mr. Ramkahalawan slipped because of a mat. The Court therefore finds the mat did not cause Mr. Ramkahalawan to fall. Assuming a mat was a contributing factor, "without [Mr. Ramkahalawan] having presented evidence of [Shoppers Food Warehouse'] actual or

constructive knowledge of the dangerous condition, it would not be reasonable to require [Shoppers Food Warehouse] constantly to inspect the produce section and fix the floor mats each time a corner becomes misplaced or turned up." *Carter v. Shoppers Food Warehouse Md. Corp.*, 126 Md. App. 147, 164, 727 A.2d 958, 967 (1999).

Mr. Ramkahalawan's opinion about how the okra came to be on the floor based on his personal experience as a produce clerk at another retail establishment does not prove actual knowledge by Shoppers Food Warehouse. This "evidence" Mr. Ramkahalawan relies upon "amounts to a mere hypothesis resting on surmise and conjecture. . . ." *Keene v. Arland's Dep't Store of Baltimore, Inc.*, 35 Md. App. 250, 254, 370 A.2d 124, 127 (1977). "A mere surmise that there may have been negligence will not justify the court in permitting the case to go to the jury." *Moulden,* 239 Md. at 232, 210 A.2d at 726. Mr. Ramkahalawan's own testimony reflects his opinion is mere speculation.

> Q: How did the okra get on the floor that you slipped on?
>
> A: It was over -- like I told you, it was over stacked.
>
> Q: How did the overstock get okra on the floor?
>
> A: God alone knows.
>
> Q: Pardon me?
>
> A: God alone knows.

ECF No. 22-2 (N. Ramkahalawan Dep. 42:10-17); ECF No. 23-3 (N. Ramkahalawan Dep. 42:10-17).

> Q: It appears that you are claiming that the sole reason why there was okra on the floor was because the okra display was overstocked?
>
> A: Yes. That's what I'm saying.

11

>       Q:      I'm asking you, how did that okra get from this -- what you claim to be an overstocked display -- onto the floor?
>
>       MR. JOYCE:  Objection.  Asked and answered.
>
>       MR. STEPHENS:  No.  He didn't answer that.
>
>       MR. JOYCE:  He said God knows.  He did answer.
>
>       BY MR. STEPHENS:
>
>       Q:      Okay.  So you have no idea?
>
>       A:      I have no clue.

ECF No. 22-2 (N. Ramkahalawan Dep. 44:5 – 18); ECF No. 23-3 (N. Ramkahalawan Dep. 44:5 – 18).

D.     *Constructive Knowledge*

Shoppers Food Warehouse asserts Mr. Ramkahalawan has not produced any "time on the floor" evidence and thus Mr. Ramkahalawan cannot prove Shoppers Food Warehouse's negligence. In *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 639-40, 871 A.2d 627, 638 (2005), the Court of Special Appeals of Maryland explained the purpose of "time on the floor" evidence.

>       (1) [I]t requires a demonstration of how long the dangerous condition existed prior to the accident so that the fact-finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and (2) it also shows that the interval between inspections was at least as long as the time on the floor.  Thus, proof of time on the floor is relevant, not only as to notice but also as to the issue of what care was exercised.

Mr. Ramkahalawan asserts the color and condition of the okra he stepped and slipped on indicate the produce was on the floor for some time.

>       Q:      What did the okra look like?  You said you indicated to [Defendant's] counsel it was three okra on the floor?

> A: Yeah. The other -- the others were around there by the refrigeration like three inches from the corner of the refrigeration right there. And they were deep green. Kind of -- the one that I stepped on was -- it was kind of rotted.
>
> Q: How did you know it was rotted?
>
> A: Well, when I got up it was stuck to my boots underneath. And as I peeled it off to see what it was, it wasn't like regular dried green, it was very slimy.
>
> So it indicates -- I'm a -- I used to be a vegetarian until I came to the United States. Hindus, we grew up on vegetables. I know okra. If it was a dry green okra, it would not be that slimy, and it stuck underneath my boots. I had to actually drag it off with my hand and show the manager.
>
> Q: And what did the other okra look like as well?
>
> A: They were deep green. It look like it had been there.

ECF No. 22-2 (N. Ramkahalawan Dep. 50:4 – 51:5); ECF No. 23-3 (N. Ramkahalawan Dep. 50:4 – 51:5).

The fact that the okra Mr. Ramkahalawan slipped on looked "kind of rotted" is not proof of the length of time the okra had been on the floor. "[T]he fact that the lettuce was discolored raises no inference that the salad had been on the stairs for any length of time at all." *Burwell v. Easton Mem'l Hosp.,* 83 Md. App. 684, 689, 577 A.2d 394, 396 (1990).

Mr. Ramkahalawan does not know and has not presented any evidence indicating the length of time the okra was on the floor before he slipped.

> Q: And do you know how long it was on the floor before you fell on it?
>
> A: I couldn't tell you. I had just got in the market. I had just got in the market, and I -- and I believe I had only picked up like two or three items, and one of the main things was a salad that night. We were having salad that night, and I wanted fresh stuff. That's where I go to get my fresh stuff.

>    Q:   Did you hear anybody at all say anything about how that okra got on the floor, or how long it was on the floor?
>
>    A:   I don't recall anybody saying anything like that. And if anybody would have said it, I wouldn't even care at that time. I was in so much of pain, and my head had a bump. I was on the floor.

ECF No. 22-2 (N. Ramkahalawan Dep. 44:19 – 45:12); ECF No. 23-3 (N. Ramkahalawan Dep. 44:19 – 45:12).

Shoppers Food Warehouse also has no knowledge about the length of time the okra had been on the floor. On the *Customer/Vendor Incident Worksheet* completed by Mr. Miller on March 17, 2010, in response to the question, "How long had substance/debris been there", Mr. Miller wrote, "unknown." ECF No. 23-6; ECF No. 24-2. In response to Mr. Ramkahalawan's Interrogatory No. 16 ("Please describe everything which the Defendant or any agent or employee of the Defendant did in an attempt to avoid the Occurrence which is the subject of this litigation"), Shoppers Food Warehouse answered, "The area was inspected by Glenn Miller approximately 30 minutes before the alleged incident and the floor was clean and clear." ECF No. 22-4 at 3.

Mr. Ramkahalawan has not produced "evidence that the dangerous condition had existed for a sufficiently long period of time for [Shoppers Food Warehouse] or [its] employees to correct it or to warn [its] invitees." *Keene*, 35 Md. App. at 258, 370 A.2d at 129. Mr. Ramkahalawan nevertheless asks this Court to leap to the conclusion that Shoppers Food Warehouse had constructive notice. This Court is not permitted to draw such a conclusion. "[The] inference must . . . be a legitimate inference and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them." *Rawls*, 207 Md. App. at 119, 113 A.2d at 408 (quoting *Benedick v. Potts*, 88 Md. 52, 55, 40 A. 1067, 1068 (1898)). Mr. Ramkahalawan has

not met his burden and therefore fails to establish the negligence of Supervalu, doing business as Shoppers Food Warehouse.

## **CONCLUSION**

For the foregoing reasons the Court finds there are no genuine issues as to any material fact and Supervalu is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately.

_ November 9, 2012_____              _____/s/_____
           Date                                            WILLIAM CONNELLY
                                    UNITED STATES MAGISTRATE JUDGE